BENEDICT DUNBIER, PLAINTIFF IN ERROR, v. ALEXANDER P. DAY, DEFENDANT IN ERROR.

1. Verdict: DISREGARD OF EVIDENCE BY JURY. When it is clear that material testimony has been disregarded by the jury,

Dunbier v. Day.

and which if considered and given due weight, would require a different verdict from that returned, a new trial will be granted.

2. **Incompetent evidence.** The admission of incompetent evidence, if it have a tendency to prejudice the party excepting to it, is good ground for a new trial.

3. ———: GOOD CHARACTER. In a civil action against an innkeeper by a guest for the recovery of damages occasioned by a loss of goods, evidence of the defendant's good character for honesty is not admissible.

4. **Objection to testimony:** EXCEPTION. Where illegal testimony is admitted over objection, to make the objection available on a proceeding in error, an exception to the ruling must be taken.

5. ———: OBJECTION MUST BE SPECIFIC. Where to a question put to a witness as to whether he were "acquainted with the general reputation" of the defendant "for honesty," etc., this objection was made—"Plaintiff objects as before," and no previous objection had been made during the examination of this witness, although there had been many, and for various reasons, during the examination of others, *held*, that the objection was bad for indefiniteness.

6. **Instruction to jury.** If an instruction to a jury, on the subject of plaintiff's contributory negligence in the loss of goods at an inn, mention as evidence of such negligence matters that are not so, it is prejudicial error.

7. ———. Three credible witnesses, whose testimony on the point was uncontradicted, having sworn positively and particularly to a fact about which they could not have been mistaken, and the judge, in his charge to the jury, having suggested that there might be serious doubt on the subject, and that they might find the evidence "evenly balanced," *held*, erroneous.

8. ———. And if, by an instruction, a question material to the issue and without any evidence to support it, be submitted to the jury, it is error.

9. ———. Where material facts alleged in the petition stand admitted by the answer, the plaintiff has the right to have the jury so instructed, and told that such facts must be taken as true.

10. **Innkeeper:** HIS DUTY AND RESPONSIBILITY. An innkeeper is bound to take all possible care for the safety and security of the goods, money, etc., of his guests while in his house. And if the goods, or money, of a guest be stolen from the inn, through no fault or neglect of the guest, nor by a companion guest, and

there is no evidence to show how it was done, or by whom, the innkeeper is liable for the loss.

ERROR to the district court for Butler county. Tried below before Post, J.

*M. H. Sessions*, for plaintiff in error.

*Robberts & Steele* and *Whitmoyer, Gerrard & Post*, for defendant in error.

LAKE, CH. J.

This is a petition in error from Butler county. In addition to the general verdict for the defendant there were two special findings of fact in his favor upon questions put to the jury by the court. These questions were: "1st. Did plaintiff Dunbier take into the hotel of defendant the sum of $1,650.00 or more? 2nd. Was the plaintiff's money, or any portion of the same, stolen from him, while a guest in the defendant's house?" The answer given to each of these questions was "No."

On behalf of the plaintiff it is claimed that these answers are unsupported by the evidence, and we think the claim is well founded. Indeed, upon a careful reading of the entire testimony submitted to the jury, we fail to discover the least particle of support for them. That the sum of $1,650.00 was stolen from the plaintiff during the night that he was a guest at the defendant's hotel is placed by the evidence beyond all reasonable doubt, if any reliance can be put upon undisputed human testimony. The plaintiff, his wife, and daughter unite in saying that he had this sum in fifty and one hundred dollar bills, in a portemonnaie by itself; that he and his daughter, in his wife's presence, counted it while seated at the supper table, on the evening of their arrival at the defendant's house, at which time the daughter gave him a one hundred dollar bill of her own which went to make up the amount. Immediately after this the plaintiff retired for

Dunbier v. Day.

the night, and he swears positively to the fact that the money, which was in a side pocket of his coat on a chair when he went to bed, the next morning when he awoke was gone, that it had been taken by some one unknown to him while he was asleep.

Against this positive testimony of these witnesses there is nothing whatever opposed, save the fact that the defendant and some domestics who say they were "in and out of the dining room" while the plaintiff and his family were at supper, and did not see them count the money. This, however, is negative testimony, and while it may be entirely truthful, for the reason that neither of these witnesses was in the room during the entire time, does not, as we think, in the least degree shake the positive testimony of the plaintiff and his witnesses to the fact that the money was there counted precisely as they state. There must have been a total disregard of the testimony of the plaintiff, and of his wife and daughter, which was unwarranted by anything appearing in the record, or the jury could not have answered these questions as they did. And where it is clear that this has been done, it is good ground for a new trial.

Opposed to the claim of the plaintiff that his money was stolen from him at the defendant's house, the theory was advanced before the jury that the loss occurred in the railway coach, while on his way from Omaha to Rising, where the defendant lived. To establish this theory the defendant was permitted to introduce over the plaintiff's objection this testimony of the witness Turpining relative to searching the train on its return the next morning for the missing money.

Q.   What, if anything, do you know about any one being sent down to search the train for the money the next morning?

Plaintiff objects as improper and immaterial in this case.   Overruled and plaintiff excepts.

A.  I know it was talked there about the time that the train came in, that it was possible the pocket book might have been lost on the train.

Q.  Was this talk in the presence of Dunbier?

A.  Yes, sir.

Q.  State if Dunbier, through his interpreter, requested any one to search the train for that pocket book?

A.  Not that I heard.

This testimony relative to the possibility of the loss having occurred on the train was wholly incompetent. The plaintiff had suggested no such thing, nor had he authorized any one to suggest it for him. His contention, which was in the German language, he neither speaking nor understanding English, constantly was that the money had been stolen from his pocket during the night, and even if other persons did suggest or claim that he had lost it elsewhere, he was not bound by it, and what they said in that respect ought not to have been used to his prejudice, as was done. The admission of this evidence is another good ground for a new trial.

It is also objected to the ruling of the court during the trial that the defendant was permitted to introduce evidence of his good character for honesty. Several witnesses were permitted to testify, against objections on the ground of incompetency, that they were acquainted with his reputation in this respect, and that it was good. In this it is clear that the court erred. The reported cases are substantially unanimous in holding that this sort of evidence is confined to criminal prosecutions and to civil cases where the nature of the action involves the general character of the party, or goes directly to affect it. "The character of the parties to a civil suit affords, in general, such a weak and vague inference as to the truth of points in issue between them, that it is not usual to admit evidence of this description." Phillips on Evidence, Cowen & Hill's and Edwards' Notes, 757, (4th ed)

In *Gough v. St. Johns*, 16 Wend., 645, overruling *Ruan v. Perry*, 3 Caines, 120, Cowen J., in speaking of the admissibility of the defendant's good character said: "Such evidence is in general confined to criminal prosecutions involving moral turpitude.   *   *   *   I mean to be understood as speaking of the general distinction. I know there are exceptions. They lie in that class of actions, or rather of issues, where general character is drawn in question by the pleadings or the points involved in a cause." And after instancing certain actions wherein it is admissible, adds: "But where a civil action is brought for an injury to property, though the injury was legally criminal, and involved moral turpitude, insomuch that on an indictment, evidence of character would be obviously receivable, there is no authoritive case except *Ruan v. Perry*, which favors its admissibility." On this point see also *Morris v. Hazelwood*, 1 Bush., 208. *Porter v. Seiler*, 23 Penn. St., 424. *Humphrey v. Humphrey*, 7 Conn., 116. *Boardman v. Woodman*, 47 N. H., 120. *Thayer v. Boyle*, 30 Me., 175. *Gutzwiller v. Lackman*, 23 Mo., 168. 1 Greenleaf on Evidence, Sec. 54. This therefore being merely a civil action for the recovery of a money judgment whereby there is imputed to the defendant, at most, only a want of due care for the safety of his guest's property, his character for honesty being in no way necessarily involved, according to the well settled rule of these authorities, and numerous others cited by counsel, it should have been kept out of the case.

But counsel for the defendant in their brief assert that the record "fails to show any exception on this point which will be considered by this court." And this is, we think, correct. As to the witness Inglehart, no exception appears to have been taken to the overruling of the objection to the admission of this testimony. For aught that appears in the bill of exceptions counsel was entirely content with the ruling against them. To make an objection

to the admission of illegal testimony available on a proceeding in error an exception to the ruling must be taken. And it must be taken at the time the decision is made. Civil Code, 308. But as to the witness Cook, an exception appears to have been duly taken to the ruling complained of, and the question raised by counsel for the defendant is whether the objection was sufficiently specific. The record shows the examination of this witness on the question of character to have been as follows:

Q.   Are you acquainted with the defendant?

A.   I am.

Q.   How long have you known him?

A.   About nine years.

Q.   Are you acquainted with his general reputation for honesty in the neighborhood in which he resides?

Plaintiff objects as before.   Overruled and plaintiff excepts.

A.   Yes, sir.

Q.   Is that good or bad?

A.   It is good.

To what counsel referred to by the objection "as before" there is no means of knowing; it is a matter of mere conjecture. The reference certainly could not have been made to an objection to anything that had occurred in the previous examination of this witness, for none had been made. If it were to an objection to something asked of another, the trouble is that the previous objections are so numerous and various that no one can possibly tell which one the objector had in view. But in this matter, counsel for plaintiff are at fault in still another particular. Even if the objection were specific enough, the inquiry objected to being merely preliminary, with the view of ascertaining whether the witness were competent to answer as to the defendant's character, and the next and vital question, as to whether his reputation for honesty were "good or bad" having been put and answered without objection,

the error would have been without prejudice and not a ground for a new trial. It was of no use to object to this preliminary question, if the succeeding and principal inquiry were to pass unquestioned. For these reasons, if the only error complained of were the admission of testimony as to the defendant's reputation for honesty, although such testimony was wholly immaterial to the issues being tried, the judgment would not be disturbed.

The only remaining grounds of alleged error to be examined relate to certain of the instructions given to the jury, and to others that were requested, but refused. The second instruction was excepted to. It was in these words:

"A guest cannot recover against an innkeeper for the loss of his goods when his own negligence has contributed to such loss. Slight omissions of care on the part of the plaintiff will not prevent his recovery. And in determining whether the plaintiff, Dunbier, by his own negligent acts, has contributed to the loss, you should carefully consider all the facts and circumstances of the case, his age, the amount of money, the manner in which he says he carried it, in the opening of such money in the depot in Council Bluffs, the fact (if it be a fact) that it was opened and counted in the dining room of defendant's hotel, the chances for being observed by designing parties from within or through the windows of such dining room, the fact that the plaintiff retired, leaving his door unlocked, if there was a bolt or lock on the door of his sleeping room; these, together with all other facts and circumstances, should be considered by you."

The concluding clause of this instruction certainly gave to the jury an exceedingly wide range to search for proof of negligence on the part of the plaintiff. "All other facts and circumstances" is rather too indefinite as a guide to a jury upon a question of this sort. Besides, of this entire recital of facts which the jury were

specially directed to, the only one from which the least degree of negligence could be imputed to the plaintiff, was the leaving of his bed room door unlocked. And even this neglect the jury were properly told in this immediate connection "would not necessarily constitute such negligence" as would prevent a recovery. And certainly neither the plaintiff's age, the amount of the money, nor the manner in which he carried it, was evidence of contributory negligence to the loss at the defendant's inn. Neither was the opening of his porte-monnaie at Council Bluffs, on the day preceding the loss, when he had occasion to take out some money for the payment of his fare from Omaha to the end of his journey. And the same is true of the fact of his counting his money in the dining room of the defendant's house. There is nothing in either, or all of these facts combined, that would relieve the defendant in any degree from the obligation which the law put upon him as an innkeeper to observe the utmost care for the security of the plaintiff's property, or money which he had with him while at his house. This instruction must have caused the jury to consider as evidence of negligence on the part of the plaintiff matters that were not so. It was therefore prejudicial to him, and good cause for a reversal of the judgment.

The third instruction was, we think, also erroneous in this. After informing the jury that, as to the fact of the money in question having been taken into the hotel, the burden of proof was on the plaintiff, and that it must be established by a preponderance of evidence, it proceeds thus: "If he has failed to produce such preponderance, or if the evidence is evenly balanced, you should find for the defendant without considering the other questions in the case."

As we have already shown, the evidence that the money was taken into the house was conclusive, with

really nothing opposed to it. Three credible witnesses, whose testimony on this point stands practically undisputed, swore positively and particularly to the fact. It was a matter about which they could not have been mistaken. Under these circumstances to suggest to the jury that there was serious doubt on the subject, or that they might find the evidence .'' evenly balanced,'' was error.

The fourth instruction was excepted to. It was as follows :

" If you find that the defendant, as proprietor or keeper of said hotel, was not guilty of any neglect or want of care in providing for the comfort of his guests, and the safety and security of their property, but on the contrary he had taken all the care, pains, and precaution which a careful, prudent, and conscientious man could have taken under like circumstances for the safe keeping of the property of his guests ; and if the plaintiff's money was lost in defendant's hotel without any negligence or fraud on the part of the said defendant, or any of his family, or any of his servants, the law will not hold him liable for said loss."

This instruction is obviously objectionable. It is wanting in precision as to the degree of care and responsibility which the law imposes upon an innkeeper for the safety of his guest's property. Just what exemption from that extreme care which, according to the great weight of authority, the law does exact, was intended by the phrase " under like circumstances," or how the jury understood it, we have no means of knowing. Certain it is however that there is nothing in the record which could properly be held to relieve the defendant from the utmost care which the law would impose upon an innkeeper in any case.

"Innkeepers," says Kent, in his Commentaries, Vol. 2, *592, " are held responsible to as strict and severe an extent as common carriers. * * The responsibility of

an innkeeper for the horse or goods of his guest whom he receives and accommodates for hire, has been a point of much discussion in the books. In general he is responsible at common law for the acts of his domestics, and for thefts, and is bound to take all due care of the goods and baggage of his guests deposited in his house, or intrusted to the care of his family or servants, without subtraction or loss, day and night."

And Mr. Redfield, in his work on Carriers and other Bailees, 458, *et seq.*, in speaking upon this subject, says: "We should now state the rule of law in regard to the extent of the innkeeper's responsibility to be, that he is presumptively responsible for all injuries happening to the goods of his guests, and by them entrusted to his care; and that he cannot exonerate himself except by showing that he did all to insure their safety, which it was in his power to do, and that no default is attributable to his servants or guests." And on page 464: "It seems to be the fair result of all the cases that the innkeeper is responsible for all the property of every kind which the traveller finds it convenient to have about him as a traveller,"

In *Houser v. Tulley*, 62 Penn. State 92, this language is used: "He," the innkeeper "is bound to take all possible care of the goods, money, and baggage of his guests, deposited in his house, or entrusted to the care of his family or servants; and he is responsible for their acts, as well as for the acts of other guests. If the goods of the guests are damaged in the inn, or are stolen from it by the servants, or domestics, or by a stranger guest, he is bound to make restitution; for it is his duty to provide honest servants, and to exercise an exact vigilance over all persons coming into his house, as guests or otherwise. His responsibility extends to all his servants and domestics, and to all the moneys of his guests which are placed within the inn; and he is bound in every event

to pay for them if stolen, unless they were stolen by a servant or companion of the guest." 1 Am. Repts., 390. And by the better authorities such seems to be the extent of the rule where the goods are stolen from the inn, and, as in this case, there is no evidence to show how it was done, or by whom; the only exceptions being those losses arising from the negligence of the guest himself, the act of a companion guest, or superior, or, as many of the cases put it, "irresistible force." Redfield on Carriers and other Bailees, sec. 596. See also *Pinkerton v. Woodard*, 33 Cal., 557. *Sibley v. Aldrich*, 33 N.H., 558. *Shaw v. Berry*, 31 Me., 478. *McDaniels v. Robinson*, 26 Vt., 316. *Piper v. Manny*, 21 Wend., 282. *Howth v. Franklin*, 20 Tex., 798. *Johnson v. Richardson*, 17 Ill., 302. *Mason v. Thompson*, 9 Pick., 280. And when the fact of the loss having occurred within the inn is established, which devolves upon the guest, the burden of showing it to be within one of these exceptions rests upon the innkeeper. *Norcross v. Norcross*, 53 Me., 163. The last clause of this instruction is also open to the objection that it may be taken as relieving the defendant from responsibility for the acts of his other stranger guests.

Another of the instructions complained of was clearly wrong, for the reason that there was not a particle of evidence to which it could apply. As an abstract proposition of law however it was correct. This instruction was the sixth, by which the jury were told that if they found the money to have been stolen "by plaintiff's own friend and traveling companion," then they should find for the defendant. There being nothing before the jury to warrant a finding that the money was stolen "by the plaintiff's own friend and traveling companion," the direct and only effect of this instruction was to mislead them to his prejudice. *Meredith v. Kennard*, 1 Neb., 312. *Meyer v. Midland Pac. R. R. Co.*, 2 Id., 319. *Curry v. State*, 4 Id., 545. *High v. Merchants Bank*, 6 Id., 155.

*Williams v. State,* Id., 334.  *Walrath v. State,* 8 Id., 80.
*Cropsey v. Averill,* Id., 151.  *Uhl v. Robinson,* Id., 272.
*Newton Wagon Co. v. Diers,* 10 Id., 284.  *Crete v. Childs,*
11 Id., 252.  *Sheldon v. Williams,* Id., 272.

On behalf of the plaintiff the court was requested to
give several instructions which were rejected. In this it
is claimed there was error. What we have already said as
to the duties and responsibilities of innkeepers, renders it
unnecessary for us here to notice any of these requests save
the first. By this one the court was requested to say
to the jury that: " It is admitted by the pleadings in
this case that the defendant is an innkeeper, and that the
plaintiff was a guest at his inn on the night in question.
It is not claimed by the defendant that he had in his inn
an iron safe, as is provided by statute that he may, and
thereby relieve himself from the common law liability of
an innkeeper. That being the case, his liability is to be
governed and controlled by that law."

Where material facts alleged in a petition stand ad-
mitted by the answer, it is a right of the plaintiff to have
the jury so told, and further that such facts must be
taken as being true. That the relation of innkeeper and
guest existed at the time in question between the plaintiff
and defendant was by the pleadings an established fact
which the judge had not charged. As to the rule of de-
fendant's liability, that was correctly stated to be as fixed
by the common law, he not having relieved himself from
its full operation as he might have done in a measure by
furnishing his inn with an iron safe, as the statute pro-
vides. We think this request should have been complied
with.

For these reasons the judgment must be reversed, and
the new trial awarded.

REVERSED AND REMANDED.