JACKSON MARION, PLAINTIFF IN ERROR, v. THE STATE
OF NEBRASKA, DEFENDANT IN ERROR.

1. **Criminal Law**: TRIAL: COMPETENCY OF JUROR. Where a per-
son is called to act as a juror on the trial of a criminal cause,
and upon examination it is made to appear that he has heard
the testimony of a part of the witnesses in a previous trial of
the same cause, and that he has formed an opinion as to the
guilt or innocence of the party on trial, and that such opinion
is founded upon the testimony heard, and is still retained by
him, it is not error to excuse him.

2. ————: ————. OPINION OF JUROR. If a proposed juror has
formed an opinion as to the guilt or innocence of a defendant
upon whose trial the juror is called to sit, and that opinion is
one which is so firmly fixed as to require evidence to remove it,
it is not error for the court to excuse him from sitting in the
cause.

3. ————: ————: JUROR A RELATIVE OF ACCUSED. If a proposed
juror is "a relative within the fifth degree" to a defendant on
trial for a criminal offense, it is a cause for challenge under sec-
tion 468 of the civil code, and if a challenge for cause is inter-
posed it should be sustained, and the juror excused.

4. ————: ————: FORMER SERVICE AS JUROR. By section 665 of
the civil code all persons are exempt from service as jurors in
the district court who have served in such court within two
years, and such service being shown, it is sufficient cause to ex-
cuse a juror.

5. ————: ————: CHALLENGE TO JURY. Where, after a jury has
been sworn to try a cause, and immediately after the adminis-
tration of the oath, but before any other act is done or step taken
in the trial, the accused by permission of the court challenges
one of the jury, and the challenge is allowed, and another juror

called against whom no objection exists, an objection to further proceeding with the case to the jury as selected was properly overruled. The error, if any, in allowing the challenge being at the instance and in favor of the defendant, he cannot complain. There would be no error in re-swearing the whole jury, and proceeding with the trial.

6. ———: CIRCUMSTANTIAL EVIDENCE: MOTIVE FOR THE CRIME. Where a defendant is on trial for the crime of murder, the evidence of which is circumstantial, it is competent to prove a conversation between the defendant and deceased concerning the purchase of property of accused by defendant just prior to their departure from home together and just prior to the alleged killing (and after which defendant reappeared alone and in possession of the property, the possession of which was to be retained by deceased until paid for) for the purpose of showing a motive for the killing; and this would be true even though the contract of purchase was reduced to writing, and put in the possession of deceased.

7. ———: EVIDENCE: PHOTOGRAPH. A photograph of deceased taken during life is competent evidence to aid in his identification.

8. ———: WITNESSES: CROSS-EXAMINATION. Where a witness, called by a defendant in his defense, is interrogated as to the conduct and presence of the accused up to about the time of the alleged commission of the crime, it is not improper cross-examination for the state's counsel to inquire as to his conduct and presence after that date without being limited to the exact time mentioned in the examination in chief.

9. ———: ———: IMPEACHING WITNESS. Where it is sought to impeach the testimony of a witness by showing a bad reputation for truth and veracity, the inquiry as to such reputation must be limited to the community in which the witness resides or has recently resided.

10. Instructions to Jury. A correct instruction given, or any instruction given on request of a defendant on trial, will not be held to be erroneous because an improper reason for the instruction is given. With the reason for the instruction the jury has nothing to do.

11. ———: QUESTION FOR JURY. If testimony is given from which a material fact may be inferred, it is the duty of the court to submit the question of such inference to the jury by proper instructions. And such instruction would not be open to the objection that the court gave undue prominence to that item of the testimony.

12. **Criminal Law:** CIRCUMSTANTIAL EVIDENCE: LOCUS IN QUO. It is proper for a jury, in a case depending upon circumstantial evidence, to consider all the circumstances and conditions proven and having any reference to, or bearing upon, the main issues in the case; and in such case, where the accused asked an instruction that in order to convict the state must prove beyond a reasonable doubt that the deceased died within a year and a day after receiving the injury; that the cause of death was inflicted by the accused, and that it was not sufficient for the state to prove the finding of the body of the deceased in the county in which the homicide was alleged to have been committed, but that it must be proved beyond a reasonable doubt that deceased was unlawfully killed, with malice aforethought, by the accused, it was *Held*, Proper for the court to add to the instruction the further charge that the place where the remains of the deceased was found, if found, might be taken into consideration, together with all the other evidence in fixing the locality of the homicide, if one was committed.

13. **Instructions to Jury.** If a proper instruction be once given it is not error for the court trying the cause to refuse to repeat it on request of the defendant.

14. ――――. Instructions must be applicable to the evidence adduced on the trial.

15. **Crimes Committed on Indian Reservation.** The courts of this state have jurisdiction and authority to try and punish persons for crimes committed on Indian reservations within the state.

16. **Constitutional Law:** CHANGE IN CRIMINAL PROCEDURE. A defendant on trial for a criminal offense has no vested right in the manner of procedure established by law at the time of the commission of the alleged crime. It is within the power of the legislature to change the procedure or manner of enforcing a punishment after the commission of the offense, and such a law would not be void as an *ex post facto* law. It was therefore *Held*, That, although the law in force at the time of the commission of the alleged offense provided that juries should be the judges of the law, but which law was repealed before the trial, it was competent for the legislature to make such change, and no error for the trial court to refuse to instruct the jury in the language of the prior law.

17. **Verdict** examined and *Held* to comply with the law.

18. **Motion for new trial** alleged facts and reasons therefor not shown by the record, and which were supported by affidavits.

Counter affidavits were filed in which all the allegations in the
motion for a new trial were disproved. *Held*, That the decision
thereon by the district court was correct.

ERROR to the district court for Gage county. Tried be-
low before BROADY, J.

*L. W. Colby* and *Hazlett & Bates*, for plaintiff in error.

*William Leese*, attorney general, for the state.

REESE, J.

Plaintiff in error was indicted at the March term, 1883,
of the district court for Gage county, for the crime of
murder, committed on the 15th day of May, 1872. Upon
trial he was convicted of murder in the first degree, and
sentenced to be hanged. Upon a review of that judg-
ment by this court, a new trial was granted. The case is
reported in 16 Neb., 349. A re-trial resulted in the same
judgment, and the case is again before us by proceedings
in error.

We will notice the questions presented substantially in
the order in which they occur in the brief of plaintiff in
error.

A large number of men were examined on their *voir dire*
before a sufficient number of competent jurors could be
found, and it is alleged that the court erred in its rulings
as to the competency of persons called to sit in the case as
such jurors.

Mr. Dobbs, of the regular panel, was called. Upon en-
quiry by the district attorney, he stated that he had heard
a part of the testimony on the previous trial, and from
that he had formed an opinion as to the guilt or innocence
of the accused, which he still had. He was challenged by the
state and excused by the court, to which plaintiff excepted.

As the case stood at the time of the ruling of the court,
there was no error in the decision. So far as the exami-

nation had gone, and assuming that plaintiff was satisfied with it, there being no examination on his part, the juror was properly excluded. As we shall hereafter notice, the "manner of procedure" in the prosecution of criminal cases is to conform to the law now in force, even though the crime was committed while the former criminal code was in force. Sec. 255, Crim. Code. By section 468 of the present code, it is enacted, that if a juror has formed or expressed an opinion as to the guilt or innocence of the accused, he shall be examined on oath as to the ground of his opinion, and if the opinion is not founded "upon conversations of witnesses of the transactions, or reading reports of their testimony, or hearing them testify," and the juror shall declare his ability to sit and decide impartially, he may be retained. The juror had heard the testimony (in part) on the previous trial, and upon that his opinion was founded. This was enough to justify the trial court in excusing him.

Mr. Mitchell was examined as to his competency. He stated that he had formed an opinion as to the guilt or innocence of plaintiff, which it would take evidence to remove. Plaintiff made no examination. Upon challenge by the state he was properly excused. *Olive v. The State*, 11 Neb., 1.

Mr. Wymore was called, and stated that he was a "first cousin" to plaintiff, and when asked by the court if he "could be a fair and impartial juryman to sit in the trial of the cause," his answer was, "I don't know; I don't think I would." This would seem to be sufficient. He was a relative within the fourth degree. The statute excludes all within the fifth. Sec. 468, Crim. Code.

Mr. Allsworth being called as a talesman, claimed his exemption, having served on the regular panel of jurymen at the June term of court of the same year. He was excused. While a verdict rendered by such a juror would be legal, yet the juror was entitled to the exemp-

tion, and it was not error to allow it.    Civil Code, sec. 665, Title Juries.

As to the jurors Reed, Morrison, and Jillett, the same rule would apply as to the juror Mitchell, above referred to.    As to Mr. Moore, the same as to Mr. Dobbs, and as to Mr. Cain, the same as to Mr. Allsworth.

The peremptory challenges having been made, the jury were sworn to try the cause.    Immediately after the administration of the oath, plaintiff in error challenged a member of the jury, Mr. Mathews, and the juror was excused.    It matters not whether this ruling was right or wrong, as it was upon plaintiff's motion.    Mr. Smith was then called as a talesman and examined as to his competency, both by the state and plaintiff in error.    No objection having been made to him, the court ordered the jury to be re-sworn. Plaintiff in error then " objected to further proceedings in the case with the present jury; the jury having already been sworn and one juror excused."    The objection was overruled and the jury re-sworn.    We see no prejudicial error in this.    While it may be that plaintiff could not, as a matter of right, have insisted upon the exclusion of Mr. Mathews, yet having done so successfully, and having waived all challenge of the new juror, and the trial not having been commenced, nor the statements made to the jury, we cannot see that he was in any degree prejudiced.

On the trial one Jacob Worley was called as a witness for the state.    He testified that in 1872 he saw plaintiff in error and the deceased together in Kansas, and that they left that state, saying they were coming to Nebraska.    That prior to their departure the deceased boarded with plaintiff in error.    That plaintiff in error desired to purchase a team and harness owned by deceased, and finally did so, for $225, paying $30 in cash; and that on the day before their departure, plaintiff in error purchased a wagon of the deceased, agreeing to pay $90 therefor, the witness having heard a conversation between them to that effect.    That

he was present at the time the contract was made with reference to the team and harness, and both parties stated the terms of the whole transaction to him. On the cross-examination it was shown that the contract for the sale of the team—and perhaps the wagon—was reduced to writing, whereupon plaintiff in error moved to strike out all the testimony of the witness in regard to the trade, as immaterial, irrelevant, and not the best evidence. The motion was overruled, and this ruling is assigned for error. Upon re-direct examination it was shown that the writing was delivered to the deceased, and by him put in his pocket; and that they left there the next morning, and the witness had never since seen the written instrument, and knew nothing more concerning it. We think the ruling of the court was correct. Not so much upon the theory that the paper was shown to be lost—yet that was sufficient, perhaps, under the circumstances—but upon the ground that the testimony was competent without showing such loss.

Soon after the parties left Kansas, they appeared together in Gage county, this state, and from there they "went west," to be gone, as stated by plaintiff in error, four or five weeks; the possession of the team and wagon being retained by deceased until they should be paid for Soon after their departure from the house of the parents of the wife of plaintiff in error to go west, and within a few days, plaintiff in error returned without the deceased, saying he had gone to Clay county, Kansas, but having in his possession the team and wagon, and wearing a part of the clothing of deceased.

This will be sufficient to show the relevancy of the conversation between the parties so shortly before the alleged killing, and also show a motive on the part of plaintiff in error in taking the life of deceased—the evidence of the killing, and of plaintiff's guilt being circumstantial—not for the purpose of proving the terms of the contract of

purchase, but to show the relations sustained by the parties, and the circumstances under which they left Kansas. It was competent to show, as a circumstance in the case, the desire on the part of the plaintiff in error to possess himself of the property, if for no other purpose.   Maxwell Pl. and Pr., 519.   1 Greenleaf, § 89.

A general objection is made that on the trial the district attorney propounded to the witnesses a great many leading questions, and objections are also made specially to particular questions.   It must be sufficient for us to say upon these objections, that upon examination of the bill of exceptions we find that in some instances leading questions were propounded to witnesses, but in nearly every instance objection was promptly made, and sustained by the court. So far as the general view of the case goes, the witnesses were reasonably fairly examined.   We have also examined the questions to which our attention is specially called, and find no room for complaint.

The next question presented is, that the court erred in admitting " in evidence the photograph of John Cameron over the objection of counsel for defendant."   This photograph does not accompany the bill of exceptions, but we find from the record that it was a likeness of the deceased, taken before his death.   While it is true it might be of little or no service in the matter of the identification of the remains, yet it might be of importance in the matter of the identification of John Cameron, the person in the company of plaintiff in error immediately before his return to the home of the Warrens, and as a means of identifying Cameron, as the person testified to by the various witnesses in his lifetime.   For this purpose it was admissible, though of no great importance.   The same may be said of the hair found where the remains were first discovered; and though of but little importance, it would be a matter to submit to the jury as a circumstance tending to aid in the identification of the remains as those of John Cameron.

The next objection to the testimony is to the cross-examination of the witness J. D. Marion, who was a witness on behalf of plaintiff in error. This witness testified that he resided in Kansas, and had resided there since the year 1884; and that in 1872 he resided in Gage county, Nebraska. That he saw plaintiff in error and deceased together just before their departure, and also saw plaintiff in error a few days afterward on his return to the Warrens'. That he resided about two hundred yards from their house, was a brother of plaintiff in error, and acquainted with his clothing to some extent,—especially his boots—when he purchased them, etc., and also giving a description of the person of the deceased. The witness also testified as to the teams of plaintiff in error, stating that he had two which he claimed, and that deceased was working for him (plaintiff in error), and that when they left they said they were going away to work on the railroad. On cross-examination the witness was asked when he saw plaintiff in error next. The answer was, that it was some three or four days after he first came back. He was then asked how long it was until he saw him again, and whether during that time he knew of his whereabouts. These questions were objected to as incompetent, and not proper cross-examination. The objection was overruled, and the witness stated that he did not see him for ten years, and did not know where he was during that time. We see no error in the ruling of the court upon these objections. It seemed to be the purpose of counsel for plaintiff in error to limit the testimony of the witness to the conduct of plaintiff in error to a period ending with his departure from Warren's with the deceased, but we do not think that the cross-examination should for that reason be limited to that time. It was proper to enquire as to his conduct after as well as before that date. The fact that the witness knew nothing more of him for ten years, rendered any further examination on that point unnecessary. It is quite proba-

ble, though not so stated in plaintiff's brief, that the district attorney had another purpose; that of showing the disappearance of plaintiff in error soon after the commission of the alleged crime. The fact that this result might follow, would not render the examination improper, and if erroneous on that ground, it would be without prejudice, for this fact had been abundantly proven by other witnesses.

George Johnson was called as a witness for the purpose of impeaching the witnesses John and Rachel Warren. He was asked if he was acquainted with their reputation for truth and veracity, and what that reputation was. He testified that he was acquainted with them "ten or twelve years ago," but that for the last five or six years he did not know where they resided and knew nothing about them. The court properly excluded this testimony. The purpose of such testimony is to affect the credibility of the witness, and should be confined to about the time the testimony is given. The usual course is to confine the enquiry to the place or community in which the witness resides. This is not an inflexible rule, for it sometimes happens that the present residence of a witness has not been of sufficient length of time to establish a reputation, and when that fact is shown the inquiry may reach back to where he had just previously resided, but we know of no rule that would permit the time to be extended so far as desired in this case. 1 Greenleaf on Ev., § 461.

A number of objections are made to the action of the court in giving and refusing instructions.

Instruction numbered seventeen asked by plaintiff in error was as follows:

"The jury are further instructed that they cannot find the defendant guilty of any other crime or offense than the one charged in the indictment, nor of any lower or less degree of homicide than the one charged in the indictment, even though the same should be proven by competent evidence beyond a reasonable doubt, for the reason

that the same is barred by the statute of limitations."
This instruction was changed by adding the following:
"No, not for the reason that manslaughter is barred, but
for the reason that the court remembers no evidence upon
which to base an instruction on the subject of manslaughter.
The court instructs that you can convict of no other of-
fense than the crime charged."

Plaintiff in error insists that this change was prejudicial
error. Why or how is not very clearly indicated. The
instruction, in so far as any question of law is concerned,
was given as asked. It was a matter of no concern to the
jury what the reasons for giving the instruction were, and
one with which they had nothing to do. Even though we
concede that the reason for the instruction entertained by
the court was wrong, that would not affect the instruction
given. A bad reason for a good instruction, if it is not
modified thereby, will not make the instruction itself bad.
We do not understand why it was necessary for any rea-
son to be given for the instruction, but whatever may have
been the purpose, the instruction is not affected thereby.

Instruction numbered nineteen was asked by plaintiff in
error as follows:

"The jury are further instructed that the burden of
proof is upon the state to prove by competent evidence
beyond a reasonable doubt, not only that the defendant
killed the said John Cameron, but also that the defendant
killed the said John Cameron, as charged in the indict-
ment, with malice aforethought; and you are not author-
ized to presume from the fact of the killing being proven
that the same was done with malice aforethought." To
this the court added "changed by adding 'unless you find
that the killing was done with a deadly weapon previously
prepared.' "

It is insisted that there was no evidence of a "weapon
previously prepared," and that the change in the instruc-
tion was prejudicial error.

The proof showed that the skull found with the decayed remains of the deceased presented evidence of having been penetrated by some instrument, presumably a leaden ball shot from a gun or pistol, and when the body was found there was a bullet inside the cavity of the skull and it was also shown that immediately before plaintiff in error and deceased left Warren's plaintiff procured from another a revolver, cleaned and repaired it for the purpose of taking it with him, and did so. These facts, with others, were a sufficient basis for the addition to the instruction of which complaint is made. The conclusion from the facts proved was for the jury. From them they might infer the previous preparation of the deadly weapon and its use. It is also claimed that this instruction is erroneous for the reason that the court by it singles out and makes prominent the fact of the previous preparation of the instrument of death. This instruction will not bear the construction claimed. The rule evidently sought to be contended for is stated in *Markel v. Moudy*, 11 Neb., 218, which is, that undue prominence should not be given to one item of the evidence, but we know of no rule of law relative to instructions which forbids the submission of a question of fact to the jury as is done in the instruction under consideration. No reference is made to any item of the evidence, nor is the attention of the jury called to the testimony of any witness.

Instruction numbered twenty asked by plaintiff in error was as follows: "The jury are further instructed that in order to convict the defendant under the indictment, it devolves upon the state to prove by competent evidence, beyond a reasonable doubt, that said John Cameron died within a year and a day after the cause of death was administered to him, and it must further be proven, beyond a reasonable doubt, by competent evidence, that said cause of death was administered by the defendant, as charged in the indictment. The jury are further instructed that it is

not sufficient for the state to prove that the body of John
Cameron was found in Gage County, Nebraska, but it
must be proved by competent evidence beyond a reasona-
ble doubt that the said John Cameron was unlawfully
killed by the defendant in Gage County, Nebraska,"
which instruction the court changed by adding, "But the
place where the remains were found, if found at all, may
be taken into consideration, together with all the other
evidence, in fixing the locality of the homicide, if there
was a homicide."

It is claimed by plaintiff in error that he was entitled
to the instruction, as asked, without the addition or change
by the court, and that the finding of the body over a year
after the alleged crime was committed was no evidence of
the locality of the crime. We think there was no error
in the addition to the instruction. It was entirely com-
petent for the jury to take into consideration all the cir-
cumstances proven as to the discovery of the body both as
to the time and place of the alleged killing. The condi-
tion of the remains as to decay and the manner of con-
cealment, the condition of the clothing, and "all the other
evidence" in this case was proper for them to consider in
arriving at a correct conclusion upon the two important
questions submitted by the instruction as asked by the
accused.

Instructions numbered ten and twelve asked by plaintiff
in error were refused and this refusal is assigned for error.
It must suffice here to say that the substance of these in-
structions were given in other instructions and it was un-
necessary to repeat them. *Olive v. The State*, 11 Neb.,
30; *Binfield v. The State*, 15 Id., 489; *Comstock v. The
State*, 14 Id., 208; *Kerkow v. Bauer*, 15 Id., 167; *Kop-
plekom v. Huffman*, 12 Id., 100.

Instruction numbered fourteen asked by plaintiff in error
was properly refused. It was, in substance, that in weigh-
ing testimony greater care should be taken by the jury in

relation to the testimony of persons who were interested in or employed to find evidence against the accused than with reference to other witnesses, because of the tendency of such to construe everything as evidence against the accused, and to disregard those things which do not tend to support their preconceived opinions. We find nothing in the case which would warrant the giving of this instruction. Instructions must be applicable to the testimony introduced on the trial. *Dunbier v. Day*, 12 Neb., 605; *Bradshaw v. The State*, 17 Neb., 147, and cases cited.

The fifteenth instruction asked by plaintiff in error and refused is copied from the statutes of this state, giving the boundaries of Gage county, with the further direction that unless it was proven that the offense was committed within such boundaries the jury must acquit. This instruction was given in substance by the fourth instruction given by the court on its own motion. This was sufficient.

The next question presented is the refusal of the court to give the eighteenth instruction asked by plaintiff in error. It is as follows: " The jury are further instructed that if they find from the evidence beyond a reasonable doubt that the defendant committed the offense charged in the indictment upon the Otoe and Missouri Indian Reservation, a tract of land set apart for the sole and exclusive use of the Otoe and Missouri tribe of Indians as a reservation, and within the boundaries of said reservation, then they will find for the defendant."

The contention of plaintiff in error is, that if the crime was committed on the reservation referred to, the courts of this state have no jurisdiction to punish the offender, that jurisdiction rests alone in the courts of the United States. This question has been before this court heretofore, and it has been held that the state courts have jurisdiction in such cases. See *Marion v. The State*, 16 Neb., 358, and cases there cited. There is no reservation

in the Enabling Act passed by the Congress of the United States, April 19, 1864, by which the boundaries of the state are fixed, but it is expressly provided " That the said state of Nebraska shall consist of all the territory included within" the boundaries fixed. No relinquishment of the place in question has ever been made by the state, and it is within the boundaries described. We adhere to our former holdings upon this part of the case, both upon the ground that we believe them to be correct, and for the further reason that having been so decided in this case on its previous hearing, *Marion v. The State, supra,* it has become the law of the case. *Hiatt v. Brooks,* 17 Neb., 33. *Leighton v. Stuart,* 19 Id., 546. The alleged crime was committed by one white man against another; both being subject to the laws and jurisdiction of the state.

Instruction numbered twenty-one, asked by plaintiff in error, that the jury were the "judges of the law and fact," was refused. This is assigned for error. The instruction was based upon the provision of section 195 of the criminal code in force at the time of the commission of the offence. (See Revised Statutes 1886, page 637), which provided that "juries in all cases shall be judges of the law and the fact." This provision was repealed upon the taking effect of the present criminal code on the first day of September, 1873, and the question here presented is, whether or not the action of the trial court complained of was erroneous, provided the instruction should have been given had the law remained in force up to and including the time of the trial. We do not deem it necessary to enquire as to what right to the instruction was given by the provision quoted from the section, but will only enquire whether or not the right to have the jury pass upon the law was one of which plaintiff in error could not legally be deprived; the law being in force at the time of the alleged homicide.

On the former hearing of this case (16 Neb., 349), it was

held that plaintiff in error must be tried by the law in
force at the time of the commission of the offense, and any
law which " makes an action done before its passage, which
was innocent when done, criminal, and punishes such ac-
tion, or that aggravates a crime or makes it greater than
when it was committed, or which, in relation to that of-
fense or its consequences, alters the situation of the party
to his disadvantage, or that changes the punishment and
inflicts a greater punishment than the law annexed to the
crime when committed, is an *ex post facto* law, and, in so far
as it affects the punishment of the party to his disadvantage,
is void." To that decision we still adhere. The ques-
tion presented by this record is, does the repeal of the
provision contained in the section of the former criminal
code referred to, and the enactment of section 255 of the
present criminal code contravene that decision or any rule
of law to the disadvantage of plaintiff in error? Section
255 is as follows : " No offense committed, and no fine, for-
feiture or penalty incurred under existing laws previous to
the taking effect of this code, shall be affected by the repeal
herein of any such existing laws, but the punishment of such
offenses, the recovery of such fines and forfeitures shall take
place as if said laws repealed had remained in force; *Pro-
vided*, That the manner of procedure for the enforcement or
imposition of all such punishments, and the collection of
all such fines and forfeitures, shall be in accordance, or as
nearly in accordance with the provisions of this code as
the nature of the case will admit; and in any case what-
ever, should the procedure provided for in this code be
wholly inadequate, the procedure provided for in the laws
repealed by this code may be followed so far as necessary
to prevent a failure of justice."

The phrase, " the manner of procedure for the enforce-
ment or imposition of all such punishments," clearly in-
cludes the provision of the former statute to which we
have alluded. The procedure only has been changed. The

degree of punishment, the character of the offense, and the rules of evidence, remain as under the former law. It may be observed that the only change in the law is to provide another tribunal to pass upon the law of the case. Prior to the change, if the words in the former code are to be taken at their full meaning and import, the jury were the judges as to the law of a case on trial. After the change the court sits in that capacity and is the judge of the law. No vested right of the plaintiff in error is affected. A new tribunal may be erected, or a new jurisdiction given to try him, and no right is abridged. *Com. v. Phillips*, 11 Pick. (Mass.), 28.

In *The People v. Mortimer*, 46 Cal., 114, it is said: "It is clear, therefore, that no constitutional difficulty would be encountered in requiring past offenses to be tried under new forms of procedure, and it is equally clear that, if such offenses are to be tried only under the old forms, and later offenses under the new, it would or might 'create endless confusion in legal proceedings.'"

Judge Cooley, in his very able work on Constitutional Limitations, 4 ed., at page 331, in discussing this question, says: "But so far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts in existence when its facts arose. The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime."

In Vol. 1, Sec. 115, Bishop on Criminal Procedure, it is said: "It is a doctrine extending through every department of the law, that rights, when vested in individuals, are unchangeable, while the remedies by which those rights are enforced may be varied from time to time at the pleasure of the legislature. Now within this principle, the absolute rights of prisoners, especially the constitutional ones, in respect to their defense, cannot be taken away. But they can be modified as to time, place, and manner of their enforcement—only the substance of them must be preserved."

We therefore conclude that the law is not *ex post facto* and within the inhibition of the constitution of the United States, nor of this state, and that plaintiff in error has been deprived of no substantial right by the refusal of the trial court to instruct as requested.

Instructions numbered twenty-two, twenty-three, twenty-five, twenty-eight, twenty-nine and thirty-one, asked by plaintiff in error, were refused by the court, but as these instructions were all given in substance in the instructions which were given, we need give them no further attention.

Objection is made to the form of the verdict. It is as follows:

" THE STATE OF NEBRASKA, }
       v.
  JACKSON MARION, }

"We, the jury, duly empaneled and sworn, do find the defendant guilty of murder as charged in the indictment, and do fix the penalty to be death.

            "A. D. McComb, Foreman."

By plaintiff's brief it is insisted that " under the decisions of this court, and by the weight of authority generally, this verdict cannot be sustained, and such a verdict conferred no power on the district court to pass sentence." This objection is quite general, and were it not for the

cases cited we would be at a loss to know the particular objection insisted upon. But, guided by the references, we conclude that the objection is that the degree of the murder is not ascertained by the jury. By the law under which plaintiff in error was tried, and which was in force at the time of the alleged homicide, murder consisted in the unlawful killing of a human being, with malice afore-thought, express or implied. It was not divided into degrees as by the present code. A finding of guilty of "murder," was a full compliance with the requirements of the law under which the trial was had.

The remaining questions presented may be disposed of together and without extended discussion. They are:

*First.* That one of the jurymen who sat on the trial of the case had previously formed and expressed an opinion as to the guilt or innocence of plaintiff in error.

*Second.* That another one had been drinking heavily of intoxicating liquors just before and during the trial.

*Third.* That some of the jurymen had and read during the progress of the trial copies of a newspaper containing accounts of the trial and statements of matter not in evidence, and affecting the character of defendant; and

*Fourth.* Misconduct of witnesses for the state and friends of the deceased, during the trial and in the presence and hearing of the jury, in expressing themselves against plaintiff in error and in favor of the prosecution, by which plaintiff in error was prevented from having a fair and impartial trial.

Upon all of these questions a number of affidavits were made and filed in the district court before the decision upon the motion for a new trial. Every allegation of fact made by the affidavits presented by plaintiff in error was fully met and disproved or explained away by the counter affidavits of all the jurymen (except one who was absent) and by the officers of the court. The ruling of the dis-

trict court upon the questions presented by these affidavits was correct and cannot be molested.'

Finding no error in the record to the prejudice of plaintiff in error, the judgment of the district court must be affirmed, which is done.

. JUDGMENT AFFIRMED.

THE other judges concur.