| 79  441 |
| 49a 306 |

| 79    441 |
| f93a ²211 |
| f93a ³212 |

| 79    441 |
| e114a²353 |

## NORMAN FRAME

*v.*

## AUSTIN BADGER.

1. INSTRUCTIONS—*should not misrecite evidence.* An instruction which recites evidence that is not before the jury, in a way which implies that the judge trying the case understands the evidence as therein recited, is erroneous.

2. When the evidence is slight, or is highly contradictory, it is improper to select isolated portions of the evidence, and give them prominence by calling the attention of the jury especially to them, and such practice should not be indulged in by the circuit courts.

3. SAME—*should not indicate any opinion as to the weight of evidence.* In giving instructions, the judge should always abstain from in any manner indicating an opinion as to the weight of evidence, unless it is of that character which the law deems conclusive.

4. LEASING—*what amounts to.* An execution was levied on certain grain raised by the defendant in execution, and was replevied by one claiming that the grain was raised on his land by the defendant, for him, under a contract by which he was to furnish the defendant's family with necessaries, and pay him as much more as he could afford, depending upon the crop raised. On the trial of the replevin suit, it appeared that the land on which the grain was raised belonged to the plaintiff's brother, but the plaintiff testified that he had control of the farm, and was to pay his brother what he considered a fair share of its products, in cash, and not in a portion of the crop: *Held,* that this testimony, being uncontradicted, established a virtual leasing of the land, and that the plaintiff, as lessee, was the owner of the grain he raised on it, and it was improper, by instruction, to leave the question to the jury, whether the grain belonged to the brother of the plaintiff or not.

5. FRAUDULENT COMBINATION—*expression of opinions as to one's ability to pay.* In an action of replevin for grain taken on execution as the property of the debtor, but which the plaintiff claims was raised for

him and on his land, by the debtor working in his employ, evidence that the plaintiff had expressed an opinion to a creditor of the execution debtor that such debtor would be able to pay some or all of his debts by a given time, which does not mislead his creditors, does not tend, in the slightest degree, to prove that the plaintiff in the replevin suit, and the execution debtor, had entered into a fraudulent arrangement to cheat or wrong the creditors of such debtor, nor would such expression of opinion imply an admission that the crop raised by such debtor belonged to him, so as to estop the plaintiff in replevin, or that he was falsely claiming the grain.

APPEAL from the Circuit Court of McHenry county; the Hon. THEODORE D. MURPHY, Judge, presiding.

Mr. F. CROSBY, and Mr. B. N. SMITH, for the appellant.

Mr. M. S. JOSLYN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant sued appellee, in the circuit court of McHenry county, in an action of replevin, for the recovery of a quantity of wheat, oats and corn. The writ was executed and the property delivered to plaintiff. Before a trial was had it was stipulated and agreed that the trial should be had as though all proper pleas in a replevin suit were filed, with replications thereto, and issues in fact joined. A trial was had before the court and a jury, resulting in a verdict in favor of defendant. A motion for a new trial was entered, but was overruled by the court, and judgment was rendered on the verdict, and the plaintiff appeals to this court.

It appeared, on the trial, that appellant had charge of and controlled a farm in McHenry county, which belonged to his brother, who was a non-resident of the State. He had with him an arrangement that he was to cultivate it, and pay his brother what he considered a fair consideration for the use of the farm. Appellant had occupied the place on these terms for five or six years, and a final settlement was made by them in the spring of 1874, for the use of the farm for the years 1871 and 1872. Appellant, under the arrangement,

was to pay his brother in cash, and not in a portion of the grain raised on the farm.

During the years 1870 and 1871, appellant had leased a portion of the farm to Leonard Frame, for a third of the grain and hay he should raise on that portion, he finding everything necessary to the cultivation and harvesting the crops, but, being unable to support his family, owing to the sickness of his wife, in the autumn of 1871 it was agreed that Leonard should work the ensuing year for appellant, on another farm, appellant to furnish his family with necessaries, and to pay him as much more as he could afford, depending upon the result of the crops, as we infer. But, owing to the sickness of his wife, Leonard was unable to remove to the other place, but remained on the farm of appellant's brother, and cultivated it as he had previously done. Appellant, in pursuance of the agreement, purchased and furnished goods, groceries, etc., for the use of Leonard's family, to the amount of $311. It also appears that Leonard was a distant relative of appellant.

In the autumn of 1872, Sherwood & Austin, having recovered a judgment in the circuit court against Leonard, for something more than $200, sued out an execution, placed it in the hands of the sheriff, and had it levied on the property in dispute, and for the recovery of which appellant brought this suit. There is no dispute that the grain was raised by Leonard on the farm of the brother of appellant.

It also appears that, in the summer of 1872, E. A. Murphy & Co. caused an execution to be levied on this and other property, on which one Delafield held a chattel mortgage, as the property of Leonard. Appellant and Delafield commenced replevin before a justice of the peace, where, on a trial, the case was decided in favor of the constable, and an appeal was prosecuted to the circuit court, but, before a trial was had, Leonard turned out property not subject to execution, to appellant and Delafield, nearly sufficient to satisfy both debts, and the replevin suit was compromised, and E. A.

Murphy & Co. were paid their debt, and the property was released from the levy, and the replevin suit dismissed.

It also appears that, in the summer of 1872, appellant had a conversation with E. A. Murphy, in which he says that appellant told him that Leonard Frame's crops were good, and that he thought he would be able to pay a part of his debts the next fall; that, on the next day, appellant came to him and said he had forgotten to tell him, on the day before, that Leonard was working for him that year. On cross-examination, this witness said he would not be positive whether appellant "said Leonard's crops were good, or that Leonard had raised good crops;" that he would not be positive as to whether appellant "said he had forgotten to tell me whether Leonard was working for him, or that he felt it his duty to come and tell me the way the thing stood."

Appellant, on being recalled, testified that he told Murphy that Leonard had raised good crops that year, and that, when he saw Murphy the next day, he said to him he thought it his duty to tell him how the matter stood, and that Leonard was working for him, and had been during the year.

The controversy arises on this evidence as to the ownership of the property. Appellant claims that, as he hired Leonard to cultivate the grain, the title is in him. On the other hand, appellee contends that the arrangement was designed and carried out for the purpose of defrauding, hindering and delaying creditors of Leonard in the collection of their debts. This seems to have been the theory of the defense on the trial below.

It is urged, as a ground of reversal, that the court below erred in giving the 1st and 3d of appellee's instructions. This is the 1st instruction:

"1st. In this case, the court instructs the jury, as a matter of law, that the burden of proof is upon the plaintiff to show, from the evidence in the case, that, at the time of suing out this writ of replevin, he was the owner of the property

in question; and if the evidence in the case, or from the lack of evidence, he has failed to show he was such owner, or if the evidence on that question is equally balanced, then the jury should find for the defendant; and it is not enough that the jury may believe, from the evidence, that the property in question, at the time of its replevy, belonged to the brother of the plaintiff, who lives in Virginia."

We, after a careful examination of the entire record, fail to find any evidence on which to base the last clause of this instruction. Appellant testified, and is uncontradicted, that he had the control of the place, and was to pay his brother what appellant considered a fair share of its products; and he had sold one-third of the grain raised on the place, and paid the proceeds to his brother. This was virtually, and in effect, a leasing of the place, and, as lessee, appellant was the owner of the grain he raised. and Leonard Frame was his tenant during the time he occupied the property prior to 1872, hence there were no grounds for leaving the question to the jury whether the grain belonged to Charles Frame. It was calculated to mislead the jury, and should have been stricken out of the instruction before it was given.

The third instruction is this:

"3d. If the jury believe, from the evidence, that, in the summer of 1872, the plaintiff, Norman Frame, told E. A. Murphy, a creditor of Leonard Frame, that he (Leonard) was doing well on the place, and that he thought, in the fall, when he came to harvest his crops, he would have enough and be able to pay all his debts, this is a circumstance and to be taken into account by the jury as tending to show that the arrangement between said Norman Frame and Leonard Frame, as to the property in question, was fraudulent as to the creditors of said Leonard Frame; and if, from all the facts and circumstances proven in the case, the jury find that such arrangement about said property was made and entered into by them (Norman and Leonard Frame) with the intent

and view on their part to hinder or delay the creditors of said Leonard Frame in the collection of their debts, then they should find for the defendant."

This instruction is unfair to appellant. In the first place, it misrecites the evidence. It states that, if the jury believe that appellant, in the summer of 1872, said to Murphy, a creditor of Leonard Frame, that he was doing well on the place, and that he thought, in the fall, when he came to harvest his crops, he would be able to pay all of his debts, it would be a circumstance indicating fraud. From this record, there is not the slightest pretense for saying that appellant gave it as his opinion that Leonard would be able to pay all of his debts in the fall. Either the bill of exceptions does not fairly represent the evidence, or the court below has fallen into error in regard to what the evidence was, when this instruction was given. The instruction implied that the judge trying the case understood the evidence as recited in the instruction, and we presume the jury so inferred, and acted.

Again, when the evidence is slight, or is highly contradictory, it is unfair to select isolated portions of the evidence, and give them prominence by calling the attention of the jury especially to them. Such a practice is improper, as this court has frequently held, and it should not be indulged in by the circuit courts. All evidence properly admitted on the trial is only received because it is supposed to tend to prove the issue, and it is the duty of the jury to weigh and consider all that is thus admitted on the trial, and the judge invades the province of the jury when he undertakes to inform them that one part of the evidence is superior to another, or that, if they believe one part of the evidence, they should discard another, or, generally, if they believe a particular item of evidence, they should find for one or the other of the parties to the suit. The court should always instruct that, if the facts averred in the issue are proved, reciting them, then they

should find for the party in whose favor they shall find the facts; or, if either party holding an affirmative fails to prove the affirmative facts, the jury may be told that if they so find, they should find against him. But the judge should always abstain from in any manner indicating an opinion as to the weight of evidence, unless it is of that character which the law deems conclusive.

Again, the theory of the first part of the instruction is wrong. We fail to see how the expression of the opinion by appellant, that Leonard Frame would be able to pay all of his debts, or any part of them, to a creditor of Leonard, or to any other person, by a given time, tends, in the slightest degree, to prove they had entered into a fraudulent arrangement to cheat or wrong Leonard's creditors. At most, it was but the expression of an opinion as to the happening of a future event. It did not mislead, nor, so far as we can see, did it tend to mislead, creditors. Credit was not given on the faith of the statement, nor did it imply the crops were admitted to belong to Leonard, so as to estop appellant, or tend to prove that appellant was falsely claiming the property. For aught that appears in the evidence, appellant may have had sufficient reason for believing that Leonard would be able to pay something on his debts the next fall. But be that as it may, we fail to see how the expression of the opinion tended to prove fraud. It must have been this instruction which misled the jury and controlled their verdict, as we are of opinion that it is not warranted by the evidence.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*