11 291
46 708

ALFRED BURLEY, PLAINTIFF IN ERROR, v. WILLIAM W. MARSH, DEFENDANT IN ERROR.

1. Chattel Mortgage: POWER OF CORPORATION: FRAUD. In order to render a chattel mortgage fraudulent and void as having been given to hinder and delay creditors, there must have been not only a fraudulent intent on the part of the mortgagor, but also on the part of the mortgagee, or the mortgagee must have had notice of the fraudulent intent of the mortgagor. But where the president of a private corporation called a meeting of the board of directors, consisting of two members beside himself, and personally procured the attendance of the other two directors, the object of such meeting being to pass a resolution authorizing said president to mortgage the property of the corporation to himself in his individual capacity, and such resolution was passed, one of said members voting in the negative, the other in the affirmative, and the president deciding the tie; and there being testimony tending to prove that the mortgage executed pursuant to the said resolution was intended by the said president to hinder and delay one of the creditors of said horse railway company, it was *held*, not necessary that there should be other testimony showing also fraudulent intent or notice on the part of the mortgagee; and further that the giving of abstract general principles of law, however correct, yet inapplicable to the proof in the case, undue prominence in the instructions probably misled the jury, and was error.

2. ———: INSTRUCTIONS. *Held*, also, that the instructions prayed for by the defendant (plaintiff in error), and refused by the court, and set out in the body of this opinion, should have been given.

ERROR from the district court for Douglas county. Tried below before SAVAGE, J.

*Redick & Connell*, for plaintiff in. error.

*George E. Pritchett*, for defendant in error, cited *Gage v. Chesebro*, 5 N. W. Rep., 881. *Hedman v. Anderson*, 6 Neb., 400. *Partelo v. Harris*, 26 Conn., 480. *Steele v. Ward*, 25 Ia., 535. *Brown v. Foree*, 7 B. Mon., 357. *Bryne v. Becker*, 42 Mo., 264. *Foster v. Hill*, 12 Pick., 89. *Bancroft v. Blizzard*, 13 Ohio, 30. *Tagg v. Miller*, 10 Neb., 442. *Weinland v. Cochran*, 9 Neb., 480.

COBB, J.

The defendant in error was a member of the board of directors, and president of the Omaha horse railway company. On the 16th of November, 1877, a special meeting of the board of directors was held, at which were present W. W. Marsh (defendant in error), General Manderson, and J. J. Brown, a quorum of said board. It appears from the record of the proceedings of said meeting as introduced in evidence, and preserved in the bill of exceptions, that "The following resolution was offered: *Resolved*, That the president and secretary be authorized and directed to execute and deliver to W. W. Marsh and Sylvanus Wright a mortgage or mortgages upon such of the real and personal property of the company as the president may think proper to secure the said W. W. Marsh and Sylvanus Wright from any and all loss or damage they may at any time sustain by reason of their having executed as sureties for the company certain promissory notes made by the company. Upon motion, this resolution was adopted by the following vote: Yeas, W. W. Marsh, C. F. Manderson. No, J. J. Brown."

On the following day, W. W. Marsh (defendant in error) as president, and John E. Wilbur as secretary of the said Omaha horse railway company, executed a chattel mortgage, in and by which they mortgaged to W. W. Marsh certain personal property, which mortgage was recorded the same day, and the principal point involved in the case under consideration is whether the said mortgage was executed, given, and received in good faith, and is entitled to precedence over the levy of an execution on the said goods and chattels, which execution was issued on a judgment rendered against the said Omaha horse railway company a few days after the execution of said mortgage.

Upon the trial, at the request of the plaintiff (defendant in error), the court gave the following instructions to the jury: "The jury are instructed that before they can find a verdict for the defendants, they must find the fact to be that the mortgage was made with the intent to defraud the creditors of the railroad company, and that both the railroad company and the plaintiff acted with that intent at the time the mortgage was given. And it is necessary not only that the railroad company acted with the fraudulent intent, but also that the plaintiff had notice of it. If the plaintiff Marsh had no notice of the fraudulent intent of the railroad company (if such intent existed on the part of the company), this mortgage is valid, it being given to secure a *bona fide* debt." "Before the jury can say that the railroad company acted with the intent to defraud creditors, in giving the mortgage, they must first say that the directors of the railroad company had such intention at the time they authorized the giving of the mortgage, because a corporation can only act through officers, and can have no intention except as the officers have intention."

The court also refused the prayer of the defendant

(plaintiff in error), to give in charge to the jury the following instructions: "1. In determining whether the object and purpose of executing the chattel mortgage to Mr. Marsh was to defeat the collection of any judgment which might be rendered on the verdict then existing in Mrs. Doolittle's favor, it will be proper for the jury to consider the official relation of Mr. Marsh to the horse railway company, and his interest in the same, and also his knowledge of the fact that such verdict had been returned, and also the fact that said mortgage was executed just after said verdict was returned, and while a motion for new trial was pending, as well also as all other circumstances accompanying and surrounding said transaction. And if from all such circumstances, as shown by the evidence, it appears that Mr. Marsh caused to be executed to himself the said mortgage, to hinder, delay, and prevent the collection of any judgment which might be rendered in Mrs. Doolittle's favor, then it will be your duty to find your verdict in favor of the defendant. Burley represents herein the rights and interest of Mrs. Doolittle."

"2. If from the evidence it appears to your satisfaction that Mr. Marsh was present as a witness at the trial of Mrs. Doolittle's case against the horse railway company, and knew of the verdict in her favor, and before the judgment thereon was rendered, for the purpose of preventing the collection or enforcement of any judgment which might be rendered on the verdict, caused the chattel mortgage to be executed to himself, then would such mortgage be fraudulent and void as against Mrs. Doolittle and her said judgment, and this would be so, notwithstanding such mortgage might have been executed for the additional purpose of securing Mr. Marsh for any debt due to him or liability incurred by him."

"3. That notwithstanding Mr. Marsh has testified

that the mortgage to him was not executed with the intent or for the purpose of defrauding Mrs. Doolittle, that such testimony is not final on this question. It is for the jury to say, from all the evidence and circumcumstances surrounding the transaction, whether or not the mortgage was executed for the purpose of preventing or hindering the collection of any judgment which might be rendered on the verdict then already returned by the jury."

"4. If, from such evidence and all the circumstances, it appears that in addition to the purpose of securing Mr. Marsh, it was also his purpose to cover up the property of the horse railway company, to hinder or prevent the enforcement of such judgment, then it would be your duty to find for the defendant."

Gen. Manderson was sworn as a witness on the part of the defendant. I quote his testimony:

Q. It appears from the record that you voted in favor of a resolution to give a mortgage to Marsh from the Omaha horse railway company. Were you a stockholder at the time?

A. No, sir.

Q. How did you come to go there?

A. I went there at the request of Capt. Marsh.

Q. State whether or not that mortgage was executed to Capt. Marsh, according to your understanding, to keep Mrs. Doolittle from collecting her judgment? (Objected to by plaintiff as incompetent. Objection sustained.).

Q. When you voted as director of this corporation at that meeting, did you intend by that act to defeat or defraud any of the creditors of the horse railway company?

A. I certainly did not. I had no interest in it.

The law as expressed in the instructions given, i.e., that in order to make the mortgage fraudulent and

Burley v. Marsh.

void, there must have been not only a fraudulent intent on the part of the mortgagor, but also on the part of the mortgagee, or the mortgagee must have had notice of the fraudulent intent of the mortgagor, is no doubt correct, as a general proposition; but I do not think it applicable to the facts, as proved in the case at bar. At the directors' meeting there were but three present. It was a special meeting, called by the president, and the attendance of the other two procured, not only by his official call, but also by his personal solicitation. One of the others voted against the resolution, so we need not inquire into his motives. The third one had sold out his stock; had "no interest in it;" attended the meeting at the request of the president, and no doubt voted for the resolution also at his request. As a matter of fact, as shown by the record, he immediately thereafter resigned as director. When it is borne in mind that Captain Marsh, the president, who called this meeting, procured the attendance of the other two directors, and presided at the meeting, and gave the casting vote, deciding the tie between the other two, one of whom voted in the negative and the other, who, while voting in the affirmative, "had no interest in it," and immediately resigned, is the identical W. W. Marsh, to whom the mortgage was given, its inapplicability will be quite apparent. Furthermore, I think that the undue prominence given to the point involved in the above was calculated to, and probably did, mislead the jury.

The instructions prayed by the defendant and refused, not only present the law, but present it in a manner applicable to the peculiar facts involved in this case, and should have been given.

For these reasons, I think the judgment should be reversed and a new trial awarded.

REVERSED AND REMANDED.