STEPHEN D. TERRY v. BEATRICE STARCH COMPANY.

FILED FEBRUARY 19, 1895. No. 5697.

1. **Contracts:** BREACH: ACTION FOR DAMAGES BEFORE TIME FOR PERFORMANCE. *Held,* That plaintiff was not entitled to recover damages for loss sustained by reason of a breach of the contract, set out in the opinion, after the suit was instituted, since the time fixed for full performance by the defendant had not then elapsed.

2. **Review:** ADMISSION OF EVIDENCE: HARMLESS ERROR. A judgment will not be reversed for error committed by the trial court in admitting immaterial testimony, when it is clear, upon an examination of the whole record, that the verdict must have been the same had the objectionable evidence been excluded.

3. ——: ——: PREJUDICIAL ERROR. Error may be predicated upon the admission of improper evidence in a cause tried to a jury, when it is obvious that the unsuccessful party was, or may have been, prejudiced thereby.

4. **Instructions:** EVIDENCE: REVIEW. It is error for the court to give an instruction which assumes as established a disputed question of fact. It is for the jury alone to pass upon conflicting evidence.

ERROR from the district court of Gage county. Tried below before BROADY, J.

See opinion for statement of the case.

*L. M. Pemberton,* for plaintiff in error:

Defendant's answer admits the making of the contract as alleged by plaintiff, and admits the violation of the contract by itself in the first instance. It then alleges as a defense that, after violating the contract itself, it put an end to the contract because plaintiff did not make payments as stipulated in the contract. Defendant could not take advantage of its own wrong and breach of contract to prevent plaintiff having the benefit of his contract. (*Jones v. Tay-*

*lor*, 56 Am. Dec. [Tex.], 55; *Cape Fear Navigation Co. v. Wilcox*, 78 Am. Dec. [N. Car.], 260.)

As to plaintiff's measure of damages the following authorities are cited: *Hinde v. Liddell*, L. R., 10 Q. B. [Eng.], 265; *Simpson v. Crippin*, L. R., 8 Q. B. [Eng.], 14; *Scott v. Kittanning Coal Co.*, 89 Pa. St., 231; *Blackburn v. Reilly*, 47 N. J. Law, 290; *Freeth v. Burr*, L. R., 9 C. P. [Eng.], 208.

*Alfred Hazlett, contra.*

Norval, C. J.

On the 20th day of October, 1890, the plaintiff and defendant entered into a written contract, of which the following is a copy:

"This agreement, made and entered into this 20th day of October, 1890, between the Beatrice Starch Company, of Gage county, Nebraska, party of the first part, and S. D. Terry, of the same place aforesaid, party of the second part, witnesseth: The said party of the first part, for and in consideration of the payments and agreements hereinafter promised and entered into and to be made and performed by the said party of the second part, hereby agrees to deliver in tanks to second party all the refuse corn arising and accumulating from the manufacture of starch in the starch manufactory of first party in Beatrice, Nebraska, for the period of two years from and after the first day of November, 1890, and also agrees to furnish grounds for feed lot, viz., the two (2) acres adjoining first party's property on the south, it being the same property purchased of Zimmerman by first party, and to furnish tank of sufficient capacity to hold at least two days' grinding, and also to furnish steam for heating the feed furnished suitable for feeding. And the party of the first part further agrees to run and operate said manufactory during said term, unless prevented by unavoidable accidents and casualties, so as to

grind not less than two hundred and fifty (250) bushels per day for each working day, excepting the months of July and August of each year. Said delivery to be made on the feed lot above described. In consideration of the premises the said party of the second part agrees to take said refuse corn and to pay therefor the sum of six and two-thirds (6⅔) cents for each and every bushel of corn ground in said starch manufactory, for the time aforesaid, payments to be made every sixty days during the continuance of this contract. It is further agreed by and between the respective parties that the second party is to make all improvements on said feeding lot that he may think necessary for feeding purposes, except tanks to store feed in, which first party furnished, and at the expiration or other determination of this contract the second party agrees to purchase all improvements placed on said feeding lot for feeding purposes by second party, at a price to be agreed upon by said parties; and in case they cannot agree as to price, then it is to be referred to three (3) disinterested parties, each party selecting one, and the two thus selected to select the third, and the price fixed and agreed upon by two of said arbitrators shall be binding upon the parties hereto. It is further agreed that if on sixty (60) days' trial it shall be found that said refuse corn was not suitable feed for cattle and that when properly fed therewith the cattle would not thrive on said feed, then this contract may be determined by the party of the second part by giving first party fifteen (15) days' notice of such election; but in case of such determination the first party is not to take or pay for the improvements made on said feed lot by second party and he may remove them. It is further agreed that if first party cannot commence to supply said refuse corn on the 1st day of November, 1890, he is to be allowed ten days (10) grace thereafter to commence the delivery of said refuse corn. It is further agreed that first party is to supply second party with the necessary water to be used for feeding purposes.

"Signed this 20th day of October, 1890.

              "THE BEATRICE STARCH COMPANY,

                 "By A. C. SCHEIBLICH, *Sec. & Treas.*

              "S. D. TERRY.

"In presence of

          "A. H. BABCOCK."

This action was brought by the plaintiff to recover damages for an alleged breach of the foregoing agreement, by reason of the defendant's failure to furnish the refuse corn according to the terms of the contract. ⁻he answer, after admitting the incorporation of the def . t and the execution of the contract above set forth, admits that the defendant did not commence to furnish to the plaintiff any feed prior to December 1, 1890, and from which time, until the 15th day of the same month, it did not supply the full amount of feed required by said contract, and alleges that it was prevented by unavoidable accidents and casualities from so doing. The defendant further answering avers that, with the exceptions aforesaid, it has performed all the terms and conditions of said contract on its part to be kept; that plaintiff made no claim for damages for the failure of the defendant to supply the full amount of feed required by the contract, from the 10th day of November, 1890, to the 15th of the following month, but continued in ·possession under said contract, and used the ·feed furnished by the defendant up to February 28, 1891, when defendant declared the contract forfeited, and annulled the same, by reason of plaintiff's failure to perform the same and make the payments therein required of him. The answer sets up, by way of counter-claim, that from December 15, 1891, defendant furnished the full amount of feed to plaintiff required by the contract, amounting in value to the sum of $1,099.56, and that plaintiff has not paid said amount, nor any part thereof. The defendant consents to the allowing $200 as damages to the plaintiff by reason of the failure to furnish the amount of feed stipulated in the contract,

for and during the time stated aforesaid, and ·prays judg-
ment against the plaintiff for said sum of $1,099.56, with
interest thereon, less the $200 damages to plaintiff. Plaint-
iff replied to the answer by a general denial. There was
a trial to a jury, with a verdict and judgment of $300 in
favor of the defendant. Plaintiff brings the case to this
court for review.

It will be observed that the contract, by its terms, was
to continue in force for the period of two years from and
after the taking effect thereof, which was fixed for Novem-
ber 1, 1890, unless the defendant was unable to commence
complying with the contract on that date, in which case he
was allowed ten days after the time specified in which to
commence the delivery of the refuse corn arising and accu-
mulating from the manufacture of starch at its factory, or
mill; that it was to grind not less than 250 bushels of corn
per day for the term of two years, except during certain
months; defendant was to furnish and deliver to plaintiff
during said period all of said refuse corn, for which plaintiff
agreed to pay six and two-third cents cents per bushel for
every bushel ground by the defendant. The evidence dis-
closes that the company did not commence the delivery of
the feed to plaintiff until the fore part of December, 1890,
and ceased to furnish any after February 28, 1891, and for
a portion of the time between said dates it did not furnish
the full amount of feed, or refuse corn, stipulated for by the
contract. The plaintiff contends he was entitled to dam-
ages for the full two years the contract was to run, while the
trial court ruled, upon the admission of testimony, that he
could only recover the damages sustained up to the com-
mencement of the action in the court below, which was on
March 26, 1891. There was no error in the ruling men-
tioned. This suit was instituted more than a year and a
half before the contract by its terms would have expired,
and it is plain that plaintiff was not entitled to recover in
this cause for any damages he might sustain by reason of

the breach of the contract by the defendant after the action was brought. There had been only a partial breach, as the time fixed for entire performance by the defendant had not then elapsed. For the damages which had accrued when the suit was instituted, he can recover herein, and not more. (*Carstens v. McDonald*, 38 Neb., 858.).

The views expressed meet the objections urged against the decisions of the court below, in refusing plaintiff's first request to charge, which was to the effect that plaintiff was entitled to have his damages assessed for the full time covered by the contract. Besides there was no evidence upon which to predicate the instruction. It is undisputed that, after the contract was executed by the parties, plaintiff fenced the lot near the defendant's mill, put in feed troughs and tanks suitable for feeding purposes, and placed in said lot something over three hundred head of cattle, to which the refuse corn furnished by the defendant was fed. On the trial the defendant was permitted, over plaintiff's objections, to prove that these cattle were of a very inferior quality. This testimony was clearly inadmissible under the issues in the case. It was wholly immaterial and foreign to the questions to be tried what kind of cattle, or their condition, which plaintiff owned and fed the refuse corn to. As stated in the briefs of the attorney for the defendant, "it made no difference what plaintiff chose to do with such feed as defendant furnished him. He might feed it to anything he wished, or not feed it at all." The defendant does not contend that the testimony to which reference has been made was admissible, but it is urged that the jury could not have been influenced thereby. A verdict will not be set aside for the erroneous ruling of a trial court admitting or excluding testimony, when an examination of the record shows that the verdict is the only one which should have been returned. (*Delaney v. Errickson*, 11 Neb., 533; *Brooks v. Dutcher*, 22 Neb., 644.)

The remaining question to be considered is whether

plaintiff was in any manner prejudiced by the admission of the testimony as to the kind and condition of the cattle which he was feeding. In other words, had the testimony been excluded, could the result have been more favorable to the. plaintiff? It is undisputed that the total value of the feed delivered by the defendant to the plaintiff under the contract, according to the stipulated price to be paid for the same, is $1,033.55, and that no portion of said sum has been paid to the defendant. All the witnesses agree that defendant commenced to furnish the full quantity of feed mentioned in the contract on December 15, 1890, and continued so to do until the 11th day of the following February. Although Mr. Scheiblich, the secretary and treasurer of the defendant, testified that the full amount was delivered up to and including February 21, and that a less quantity was supplied.from said date until the end of the month, as well as during the first half of the month of December, 1890, plaintiff and his witness admit that some refuse corn was delivered to the defendant both prior and subsequent to the period during which 250 bushels per day were furnished. It is also disclosed that the kind of feed contracted for could not be procured in the vicinity of Beatrice, other than of the defendant, and that plaintiff, after the breach of the contract, was compelled to feed his cattle shelled corn, which, according to the evidence, is the best substitute for the refuse corn from the factory. The testimony on the part of the plaintiff is to the effect that two-fifths of a bushel of shelled corn is equal for feeding purposes to one bushel of refuse corn furnished by the defendant. Stated differently, that it would require 100 bushels of shelled corn per day to put on as much flesh as the feed of 250 bushels of corn after it has passed through the starch mill. The testimony of the witnesses for the defendant tends to show that one-fifth of a bushel of shelled corn is equivalent to one bushel of the refuse corn. It is shown that the average market value of corn at Beatrice

from December 1, 1890, to the following March was 50 cents per bushel. By the terms of the contract the feeding of the cattle would cost the plaintiff 6⅔ cents per bushel for the feed, or $16.66⅔ per day, while feeding them corn cost him $25 per day if but 50 bushels were used, or $50 per day in case 100 bushels were fed. The plaintiff therefore sustained damages for each day during the time the defendant failed to supply any feed in the sum of $8.33⅓, according to the testimony of the defendant's witnesses, or $33.33⅓ per day, should the testimony of the plaintiff's witness be adopted as the most accurate and reliable. While, as already noted, there is some conflict in this testimony as to the precise length of time the defendant complied with the contract by furnishing the full quantity of feed required, yet it being undisputed that the total value of the feed furnished by the defendant is $1,033.55, it is clear that the entire quantity of refuse corn supplied was approximately 15,500 bushels, and allowing 250 bushels per day as called for by the contract, would last but 62 days. From November 10, 1890, the date the contract went into effect, to February 28, 1891, the day the last feed was furnished by the defendant and the contract was declared terminated by it, is 110 days. Deducting therefrom 62, the number of days in which the total feed furnished should have been supplied, we have remaining 58 days, during which there was an entire failure on the part of the defendant to comply with its agreement. If we allow plaintiff damages at $33.33⅓ per day, as fixed by the testimony of his witness, his aggregate damages would be a fraction over $1,933.33, or nearly $900 more than was due from the plaintiff to the defendant on account of feed supplied, and yet the latter recovered $300. If the correct measure of plaintiff's damages was but $8.33⅓ per day, as some of the evidence tends to show, he has no right to complain of the verdict. The writer is inclined to believe that the sum last stated more nearly represents the actual daily loss sus-

tained by plaintiff by reason of the breach of the contract by the defendant. We are in part led to this conclusion by the fact that for a short time while the mill was not running the plaintiff agreed to, and did, accept from the defendant as a compliance with the contract, 50 bushels per day of shelled corn, or one-half the quantity which the former at the trial insisted was equivalent to 250 bushels of corn after the starch had been extracted therefrom by the starch factory. There was, however, evidence before the jury from which they might have found that the pecuniary loss sustained was much greater than $8.33$\frac{1}{3}$ per day. There being a conflict in the evidence relating to the question of damages, we cannot say that the verdict is the only one which should have been returned in the case. Nor can we determine that the plaintiff was not prejudiced by reason of the admission of testimony as to the kind and condition of the cattle which he had been feeding. On the contrary, the jury may have been, and probably were, influenced in their deliberations by the admission of the testimony alluded to, and hence the plaintiff is entitled to a new trial by reason thereof.

Complaint is made of the giving of the second instruction, which reads as follows:

"2. The written notice by defendant to plaintiff, dated February 24, 1891, was a consent to wait on plaintiff till February 27, 1891, for pay for the feed before that received by plaintiff from defendant under the contract. That notice and defendant's answer herein operate as a waiver of the default of plaintiff to make payment before February 27, 1891, but not as a waiver of such default of payment beyond the last named date. From that date, the undisputed evidence shows, neither party is entitled to anything under the contract for any time subsequent to that date; but on the pleadings and proofs the plaintiffs must be allowed to stand on the contract and claim under it up to that date, and the rights of both parties under

the contract must be determined in this action up to said February 27, 1891, at which time the plaintiff must be held to have abandoned the future part of the contract. From the beginning of the contract up to February 27, 1891, the plaintiff must pay to defendant the contract price for all feed he received from defendant under the contract, and defendant must pay to plaintiff all damages plaintiff has suffered by reason of defendant's failure to comply with the contract.   You will return your verdict accordingly, subtracting the less from the greater, and rendering your verdict for the difference in favor of he party to whom you find due the greater amount."

This instruction assumes that plaintiff had violated the contract by not making payment according to the terms thereof, and then informs the jury that certain acts of the defendant constituted a waiver of the default of plaintiff to make payment for the feed before February 27, 1891, but not after that date.   Under the contract, plaintiff was to pay for the feed furnished at the end of each sixty days.   While it is true plaintiff has never paid anything, there was evidence before the jury tending to show that at the expiration of the first sixty days he had sustained damages by reason of the defendant's failure to comply with the contract in a sum equal to, or greater than, the value of the feed furnished during said period.   If this evidence was true, and the jury were the sole judges thereof, plaintiff did not owe defendant anything at the end of the first sixty days, and, therefore, he was not in default by reason of his not paying the defendant at that time for the feed which had been previously furnished.   The instruction was erroneous in assuming that the plaintiff was guilty of a breach of the contract.   That was for the jury to determine from the evidence under proper instructions.   Again, by the instruction the jury were charged that neither party was entitled to recover under the contract for any thing subsequent to February 27.   In this the court erred.   If plaintiff was

not in default, he was entitled to recover all damages sustained up to the commencement of the suit by reason of the breach of the contract by the defendant.   As elsewhere stated, on the admission of testimony the court ruled that plaintiff could recover damages up to the date the action was instituted, while by this instruction  he was limited to an earlier date.

For the errors indicated the judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.