GEORGE S. WILLIAMS v. STATE OF NEBRASKA.

FILED JANUARY 9, 1896. No. 7929.

1. **Instructions:** EVIDENCE. An instruction which recites material evidence that is not before the jury in such a way as to imply that the judge trying the case understands that such evidence is in the record, is erroneous.

2. **Evidence:** INSTRUCTIONS. The effect of the evidence and the inferences deducible therefrom are for the jury; and for the court to instruct the jury that the evidence establishes a certain controverted fact in issue, is an unwarranted assumption of the functions of the jury.

3. **Homicide:** INSANITY: EVIDENCE: INSTRUCTIONS. Where, on the trial of a murder case in which the defense is temporary insanity, the court undertakes to detail in an instruction what evidence the jury may consider in determining whether the prisoner knew the killing was wrong, the court must impartially recite the material evidence offered both by the state and the prisoner to sustain their respective theories of the homicide.

4. ———: ———: ———: ———. It is prejudicial error for the court in such a case to group together in an instruction the important material facts put in evidence by the state as to the prisoner's sanity and omit all mention of the evidence produced by the prisoner tending to traverse that of the state.

ERROR to the district court for Jefferson county. Tried below before BUSH, J.

*John Heasly* and *W. H. Barnes*, for plaintiff in error:

The practice of giving instructions detailing the evidence and calling the attention of the jury to particular portions of the testimony, thus giving such testimony undue prominence, has been disapproved. (*City of Lincoln v. Beckman*, 23 Neb., 677 ; *Marion v. State*, 20 Neb., 233; *Long v. State*, 23 Neb., 33; *Markel v. Moudy*, 11 Neb., 213; *Burley v. Marsh*, 11 Neb., 291; *Kersenbrock v. Martin*, 12 Neb., 376.)

*A. S. Churchill, Attorney General, George A. Day, Deputy Attorney General,* and *E. H. Hinshaw, County Attorney,* for the state.

RAGAN, C.

In the district court of Jefferson county, George Williams was convicted of the crime of murder in the second degree for the killing of one Charles A. Smiley and sentenced to imprisonment in the penitentiary for thirteen years. Williams brings the judgment of the district court here for review.

Of the errors assigned and argued we shall notice only one. Williams' defense was in substance that at the time he committed the homicide he was temporarily insane, being then and there deeply intoxicated and in a state of frenzied excitement resulting from such intoxication, and a vile and opprobrious remark made concerning his wife by Smiley, and an assault and battery inflicted upon him by Smiley. The district court charged the jury as follows: "The court instructs the jury that if they believe from the evidence in this case beyond a reasonable doubt that the defendant did, upon the 20th day of August, 1894, have a quarrel with the deceased, and that deceased struck defendant and knocked him down; that defendant afterwards said that he would kill the deceased, and that he would get a gun and 'do him' before 12 o'clock; and that defendant did get

a loaded revolver, and follow and hunt up the deceased, and shoot and kill him; and thereafter stated that he had come down to kill the son-of-a-bitch, and hoped he had killed him; and when asked why he had killed the deceased pointed to a bruise or wound on his face where the deceased had struck him, and said, 'See what he done to me;' and when asked what he had killed deceased with, said, 'A brand-new 38, and a dam'd good one;' and that he had gone down to kill him, and hoped he had; and told his wife that he had got the revolver when she was at supper,—then the jury have a right to consider all these facts in determining whether the defendant had knowledge that the act of shooting and killing Charles A. Smiley was wrong." This instruction was prejudicially erroneous for several reasons:

1. The court told the jury that if they found from the evidence that Williams said that he would "get a gun and do him before 12 o'clock," etc. The record contains no evidence of any such remark made by the prisoner. The jury could not find a fact outside the evidence, and the injustice to the prisoner in this part of the instruction was that the jury, without inquiry or reflection, were likely to take it for granted that the prisoner had made the threat because the court in its instruction assumed that he had. An instruction which recites material evidence that is not before the jury in such a way as to imply that the judge trying the case understands that such evidence is in the record, is erroneous. (*Frame v. Badger*, 79 Ill., 441.) If by an instruction a question material to the issue, and without any evidence to support it, be submitted to the jury, it is error. (*Dunbier v. Day*, 12 Neb., 596. See, also, for the same principle, *McCready v. Phillips*, 44 Neb., 790.)

2. Again, in the instruction the court said to the jury: "If you believe from the evidence that the defendant did get a loaded revolver and follow and hunt up the deceased," etc. No such fact was testified to in such language. We assume, for the purposes of this case, that such a fact was

inferable from the evidence, but who was to draw such an
inference?    The effect of the evidence and the inferences
deducible therefrom were for the jury, not for the judge.
By this statement the court assumed that the evidence war-
ranted a certain inference, and in doing so he invaded the
province of the jury. (*Prairie State Loan & Trust Co. v.
Doig*, 70 Ill., 52; 2 Thompson, Trials, sec. 2290; *Omaha
Fair & Exposition Association v. Missouri P. R. Co.*, 42
Neb., 105; *Terry v. Beatrice Starch Co.*, 43 Neb., 866.)

3. But the most serious defect in the instruction consists
in this : In the instruction the court grouped together the
important material facts put in evidence by the state to sus-
tain its theory of the homicide and utterly ignored the
evidence produced by the prisoner which tended to traverse
the theory of the state.    The evidence on behalf of the
prisoner tended to show that at the time of the homicide
he was suffering from a disease of the heart which ren-
dered him easily excited; that he was deeply intoxicated;
that the deceased had made a remark to him concerning
his wife of the vilest and most opprobrious character; that
he had assaulted and knocked the prisoner down, and that
all these things had conduced and contributed to put him
into an excited and frenzied state of mind to such an ex-
tent that he had lost control of himself and consciousness
of his actions.    We do not say that the evidence estab-
lished this theory of the prisoner, but we do say that it
tended in that direction, and whether this evidence war-
ranted the conclusion which the prisoner claimed for it,
was for the jury.    It is to be observed that when the court
comes to submit to the jury the question as to whether the
prisoner at the time he shot Smiley knew that the killing
was wrong, ignores all the evidence of the prisoner on the
subject and picks out and holds up for the consideration of
the jury only the claims of the state.    After reciting the
material facts proved by the state, the court said to the
jury: " You have a right to consider all these facts in de-

termining whether the defendant had knowledge that the act of shooting and killing Charles A. Smiley was wrong." The jury not only had the right to consider all the facts in evidence detailed by the court, but it had the right, and it was its sworn duty, to weigh and consider all the facts testified to by the defense in support of the theory of the prisoner. By this instruction the district judge practically said to the jury: "You consider the evidence that I have detailed to you and omit all consideration of evidence not detailed." When the court undertook to detail in an instruction what evidence the jury might consider in determining whether the prisoner knew at the time that the killing of Smiley was wrong, it was its duty to hold the scales of justice equally balanced, to give impartially to the jury the material evidence offered by the state to sustain its theory and the material evidence offered by the prisoner to sustain his theory. (*Markel v. Moudy,* 11 Neb., 213; *Burley v. Marsh,* 11 Neb., 291; *Kersenbrock v. Martin,* 12 Neb., 374; *Marion v. State,* 20 Neb., 233; *Long v. State,* 23 Neb., 33; *City of Lincoln v. Beckman,* 23 Neb., 677; *Carruth v. Harris,* 41 Neb., 789; *People v. Clarke,* 62 N. W. Rep. [Mich.], 1117.) In this last case it was said that an instruction in which the strong points of the evidence for the state were brought out while the evidence for the defendant was not so emphasized, and certain testimony which tended to negative material statements of the state's witness was not even referred to, was prejudicial to the defendant.

The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.